**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| HELEN VOLPENHEIN, | Case No. 1:13-cv-235 |
| Plaintiff, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Helen Volpenhein filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On December 13, 2007, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of January 1, 1995, due to physical and mental impairments. (Tr. 132, 179). Plaintiff was insured for benefits through September 20, 2004 (*i.e.,* Plaintiff's last date insured). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On January 22, 2010, ALJ John Montgomery held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, Plaintiff's husband and an impartial vocational expert. On July

1

28, 2010, ALJ Montgomery denied Plaintiff's applications in a written decision. (Tr. 35-45). Plaintiff now seeks judicial review of the denial of her application for benefits.

At the time of the administrative hearing, Plaintiff was 62 years old with a high school education and past relevant work as a receptionist. She last worked regularly in 1994, although she did work briefly on a part-time basis in 2000 and in 2005. Plaintiff alleges disability due to osteoporosis with vertebral compression fractures and residual effects of cancer of the brain, lung, and liver. These residual effects include hearing loss, short-term memory loss, poor balance, and clumsiness with her hands. Plaintiff was insured for Social Security Disability benefits through September 30, 2004.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "status post adenocarcinoma of the lungs with metastases." (Tr. 37). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> The work cannot involve exposure to hazards such as unprotected heights, moving machinery, or climbing ladders, ropes, or scaffolds. She could occasionally balance. She is required to work in an environment free of even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

(Tr. 41). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as a receptionist. (Tr.

2

44). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to find that Plaintiff's hearing loss, memory deficits, balance problems and back pain were "severe" impairments; 2) improperly weighing the medical opinions in formulating Plaintiff's RFC; and 3) mischaracterizing Plaintiff's testimony and failing to specify what weight he assigned to the testimony of Plaintiff's husband. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Step 2 Analysis*

Plaintiff first argues that the ALJ erred in failing to find that her hearing loss, memory deficits, balance problems, and back pain due to osteopenia were not "severe" impairments prior to her last date insured.  (Doc. 10).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education,

5

and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). *See also Rogers v. Commissioner,* 486 F.3d 234, 243 n. 2 (6th Cir.2007).

Here, at step-two of the sequential evaluation, the ALJ found Plaintiff's status post adenocarcinoma of the lungs with metastases was a severe impairment. (Doc. 37). The ALJ noted that Plaintiff alleged problems with her balance, memory, and hands associated with sensory motor neuropathy, as well as difficulty hearing. However, the ALJ also noted that Plaintiff did not report significant problems with her hands at the administrative hearing. She also testified that she was able to write messages. The ALJ further noted that Plaintiff had not received any treatment of her hands.

With respect to her balance problems, the ALJ noted that Plaintiff reported occasional balance problems beginning in 2004. An office note from Hyde Park Oncology on February 18, 2005 indicates that Plaintiff reported some episodes of pre-syncope or mild syncope but that she did not notice any real imbalance.

The ALJ's step-two analysis also addressed Plaintiff's back pain, noting that a report from Antonio Bondoc, M.D. (Plaintiff's family physician) in June 2000 showed that a densimetry (DEXA) scan revealed that Plaintiff was in the severe osteopenic (pre-osteoporisis) range. Dr. Bondoc recommended multi-vitamins and Citrucel, but did not recommend a bone biopsy, and reported that Plaintiff was doing well with her exercise program. The ALJ also noted that the record contained treatment notes from an

6

emergency room visit on June 27, 2005, wherein Plaintiff was seen for back pain after she bent over the drier and "heard a pop." Plaintiff was diagnosed with an acute lumbar muscle strain, treated with Percocet and released.

With respect to hearing loss, the ALJ noted that the evidence of record showed that Plaintiff has some hearing loss, particularly in her left ear. (Tr. 40). Specifically, an audiology evaluation from Robert J. Smyth, M.D. in March 1999 showed a profound sensory hearing loss in the left ear and a high frequency sensory loss in her right hear. An audiometric report from August 30, 2004 showed that the left ear was slightly worse than the right and that her discrimination in the left ear was decreased. Plaintiff testified that she can hear normal telephone conversations with her right ear and has no problem with normal conversation. The ALJ also noted that Plaintiff had no problem hearing or communicating at the administrative hearing.

Plaintiff also appears to assert that the ALJ erred in finding that her depression and anxiety were not severe impairments. In this regard, the ALJ noted that the record indicated that Plaintiff's mental impairments resulted in mild and/or no symptomology. (Tr. 39). The ALJ noted that Dr. Deardorff, a state agency psychologist, consultatively examined Plaintiff in March 2004 and diagnosed her with adjustment disorder with anxiety. (Tr. 339). Notably, upon examination, Dr. Deardorrf found that Plaintiff put forth adequate effort and did not appear overly fatigued, but her attention and concentration skills were "marginally adequate." (Tr. 335-336). Dr. Deardorff administered the Wechsler Adult Intelligence Scale – Third Edition, and Plaintiff obtained a Verbal Scale IQ of 87, a Performance Scale IQ of 78, and a Full Scale IQ of 81. On memory testing with the Wechsler Memory Scale – I, Plaintiff obtained a

7

Memory Quotient of 97, and on the WRAT-3, Plaintiff obtained a standard score of 101; Dr. Deardorff noted that Plaintiff's word recognition skills fell at post-high school level. Ultimately, he opined that Plaintiff only had mild limitations due to her emotional difficulties. (Tr. 340). Plaintiff also contends that the treatment records of Dr. Bondoc, her family physician, also indicate that she suffered from depression and anxiety. (Tr. 386-87).

However, Plaintiff has offered no evidence to rebut the ALJ's findings and/or to establish that her depression or anxiety (and/or hearing loss, memory deficits, pain and balance problems) produced symptoms limiting her ability to perform work activity. It is well established that the mere existence of an impairment, however, does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,* 257 F. App'x 923, 930 (6th Cir. 2007) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)). When the record does not contain any reports, doctor statements or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel,* No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.,* No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's hearing loss, memory loss, impaired balance, back pain, and depression to be a "severe" limitation(s), such error was harmless. This is because the regulations require that if one

"severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.,* No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, the ALJ's decision indicates that he properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining his RFC. (Doc. 22, 21–22.) Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

### 2. RFC Assessment

Plaintiff's next assignment of error asserts the ALJ's RFC assessment is not substantially supported because it failed to include all of Plaintiff's limitations. Specifically, Plaintiff alleges that while the ALJ's decision indicates that he relied on the opinion of Dr. Perencevich, a state agency reviewing physician, in formulating Plaintiff's RFC, the ALJ erred by failing to include Dr. Perencevich's restriction that Plaintiff was limited to no loud work environments. (Tr. 484). Plaintiff further asserts that the ALJ's RFC finding does not sufficiently account for limitations associated with Plaintiff's memory loss and her problems with attention and/or concentration. Plaintiff's assertions will be addressed in turn.

9

### A. Noise Limitation

With respect to Dr. Perencevich, upon review of the record, he opined that Plaintiff was "capable of performing a job that does not involve heavy lifting in a work setting where the claimant is not exposed to loud noise or required to balance or work in high places." (Tr. 485). However, the ALJ's RFC assessment failed to include the prohibition against loud noise. (Tr. 41). The Commissioner argues that to the extent the ALJ erred in this regard, such error is harmless. The undersigned agrees.

Notably, at the administrative hearing, the ALJ's hypothetical question to the vocational expert, *limited Plaintiff to environments without loud noises.* (Tr. 118)(Emphasis added). In response, the vocational expert testified that Plaintiff could perform her past relevant work with this limitation in addition to all of the restrictions listed in the ALJ's RFC determination. *Id.* As a result, though the ALJ did not include this limitation in his RFC, any error in failing to do so was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 408-09 (2009) (citing, e.g., *Nelson v. Apfel,* 131 F.3d 1228 (7th Cir. 1997), a social security case) (holding that the reviewing court must "ask[] the harmless-error question," which forbids "reversing for error regardless of its effect on the judgment."). See also *Isaacs v. Colvin*, 1:12-CV-777, 2013 WL 6230352 (S.D. Ohio Dec. 2, 2013) report and recommendation adopted sub nom*. Isaacs v. Comm'r of Soc. Sec.,* 1:12CV777, 2014 WL 1271030 (S.D. Ohio Mar. 27, 2014) (*"*the ALJ's failure to include such a restriction [no exposure to environmental irritants] would be a harmless error because the jobs identified by the vocational expert do not require exposure to atmospheric conditions, weather, extreme cold, extreme heat, or wet and humid

conditions."). Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### B. *Evaluation of Opinion Evidence*

Next, Plaintiff contends that the ALJ's RFC assessment did not properly account for any limitations caused by her balance problems, memory loss, and depression and by her problems with attention or concentration. In this regard, Plaintiff purportedly asserts that the ALJ improperly disregarded the findings of Dr. Leder, Plaintiff's treating oncologist, and instead gave deference to the finding of Dr. Deardorff, a state agency consultative examiner. As explained below, Plaintiff's contentions lack merit.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); but see *Tilley v. Comm'r of Soc. Sec.*,

11

No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under Blakely and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir.2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir.1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. See *Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir.2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); see also *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing C*utlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

In 1996, Plaintiff began complaining to Dr. Leder that her short term memory was not as good as it used to be. (Tr. 449). In 1996, Plaintiff complained of an occasional backache. (Tr. 448). In 1997, Dr. Leder stated that Plaintiff's gradual changes in memory were a problem, but that Plaintiff could still be trusted to have a credit card. (Tr. 445-46). In 2000, she complained of some discomfort in her thoracolumbar spine, but specifically described it as discomfort, not pain. (Tr. 400). In February 2004, he found

12

that she was "quite forgetful and continues to have problems with imbalance." (Tr. 505). At that time, Dr Leder further stated that "she looks about the same, is alert and oriented, but forgetful (she has to repeat herself) and it would be near impossible for her to find a job." (Tr. 505).

The ALJ gave "little weight" to Dr. Leder's statement that "it would be near impossible for [Plaintiff] to find a job." (Tr. 42). In so concluding, the ALJ noted that Dr. Leder "did not articulate on this statement or explain this statement. It is unclear if he is basing this on her physical condition, her mental impairments, or a combination of both." (Tr. 38). Notably, "[c]onclusory statements from physicians are properly discounted by ALJ's." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009). The ALJ went further and also determined that Dr. Leder's opinion that Plaintiff would be unable to find work was not consistent with the evidence in the record and was not supported by the clinical and laboratory findings in the record. (Tr. 38, 42). In this regard, the ALJ noted that Dr. Leder's notes regarding Plaintiff's poor memory were contradicted by the testing completed by Dr. Deardorff, just a month after Dr. Leder issued his opinion that Plaintiff would not be able to find a job. (Tr. 334-40). *See* 20 C.F.R. § 404.1527(d)(3)-(4) (medical opinions evaluated for consistency and supportability). As discussed above, Plaintiff had normal memory testing in March 2004. *Id.* In light of the foregoing, the undersigned finds that the ALJ properly evaluated the findings of Dr. Leder.

With respect to Dr. Deardorff, upon examination, he opined that Plaintiff's mental ability to maintain attention, concentration, persistence, and pace was mildly impaired by her emotional difficulties, and she could "likely" maintain sufficient attention and concentration to perform simple repetitive tasks, but he also opined that Plaintiff's ability

13

to withstand the stress and pressure associated with daily work activities was mildly impaired and that "stress may result in increased anxiety and decreased attention and concentration skills." (Tr. 340). The ALJ gave "great weight" to Dr. Deardorrf's opinion that Plaintiff's mental impairments resulted in mild limitations in maintaining concentration, persistence and pace. The ALJ determined that these findings were consistent with the evidence. As detailed above, the ALJ properly determined that the record indicated that Plaintiff had no significant mental limitations on her ability to function prior to her date last insured.

Plaintiff argues that Dr. Deardorff's opinion about Plaintiff's ability to maintain attention and concentration is internally inconsistent with his observation during the interview and testing that Plaintiff had only "marginally adequate" attention and concentration. (Tr. 340). As such, Plaintiff contends that "[i]t was illogical for the ALJ to rely on Dr. Deardorff's internally inconsistent opinion, especially since that opinion was contradicted by the opinion and observations of Dr. Leder, who observed on numerous occasions that Plaintiff had problems with her memory. . . ." Plaintiff further asserting the testing performed by Dr. Deardorff was conducted in an artificial environment which does not approximate a true work environment. To the contrary, Plaintiff's contends that Dr. Leder observed Plaintiff's difficulty with memory in the context of having conversations with her and asking her questions about what had transpired since her previous visits. Plaintiff's contentions are unavailing.

As noted by the Commissioner, upon intelligence and memory testing, Dr. Deardorff opined that Plaintiff's memory skills fell within average limits, and that Plaintiff had some mild impairments in her ability to maintain attention, concentration,

14

persistence, and pace and in her ability to withstand stress. (Tr. 339-40). He also found that such limitations were the result of emotional difficulties, not to problems with her memory. *Id.* More importantly, Dr. Deardorff's finding that Plaintiff had "marginally adequate" concentration and attention is not inconsistent with his determination that she had some mild limitations in her attention and concentration.

Next, Plaintiff's assertions that Dr. Deardorff's assessment was not entitled to deference because the testing he performed is "different from the type of memory needed while working as a receptionist" is also not well-taken. (Doc. 10 at 16). As noted by the Commissioner, Dr. Deardorrf performed memory testing wherein Plaintiff could recall eight digits forward and five digits backward. (Tr. 336). Such testing is relevant to Plaintiff's responsibilities as a receptionist where she would have to recall and record seven-digit phone numbers.

In sum, the ALJ properly determined that Dr. Deardorff's opinion was supported by the objective evidence, the ALJ did not err by relying on his opinion. See 20 C.F.R. § 404.1527(d)(3)-(4) (medical opinions evaluated for consistency and supportability). As detailed above, the record evidence fails to establish Plaintiff had any severe limitations related to her memory and hearing loss prior to her date last insured. As such, the ALJ was not required to include limitations based on these conditions in his RFC finding. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) (the ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve conflicts in the evidence differently). Accordingly, Plaintiff's second assignment of error should be overruled.

*3. Credibility Assessment*

Plaintiff's final assignment of error asserts that the ALJ mischaracterized Plaintiff's testimony.  Specifically, Plaintiff appears to assert that the ALJ improperly determined that Plaintiff's testimony, which was given at a hearing conducted in 2010, would be expected to be less reliable than the statements she made about her function at or near the time of her date last insured in March 2004.  Plaintiff argues that the ALJ should have relied on Plaintiff's husband's testimony regarding Plaintiff's abilities over both Plaintiff's own testimony and Plaintiff's report to Dr. Deardorff regarding her daily activities.  Plaintiff further asserts that the ALJ failed to specify the weight he assigned to the testimony of Plaintiff's husband.  Plaintiff's assertions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts

16

Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392. Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination.

As noted by Plaintiff, her testimony was confusing, as she had a difficult time keeping the 2000s separate from the 1990s, and kept confusing the two. (See Tr. 65-66, 79-80, 88, 93-95). She also had a habit of saying that things had occurred 3-4 years ago, regardless of how long ago they actually occurred. (Tr. 88, 91, 93*).* In any event, the ALJ noted that Plaintiff testified that she had memory problems, hearing loss, balance problems and neuropathy in her hands prior to her date last insured. (Tr. 43). The ALJ further addressed the testimony of Plaintiff's husband. In this regard, the ALJ noted that Plaintiff's husband testified that Plaintiff would frequently mix up messages for his business calls and misplace paperwork. Her husband reported that they had to buy telephones with amplification to accommodate Plaintiff's hearing loss in her left ear. He also noted that Plaintiff frequently tore the mirrors off the car while backing out of the garage.

The ALJ recognized that it is difficult to recall facts precisely as testified to by Plaintiff and her husband prior to the Plaintiff's date last insured of September 30, 2004. As such, the ALJ determined that Plaintiff's statements to Dr. Deardoff, in March 2004

17

were "more reliable than current statements." Ultimately, the ALJ concluded that the medical evidence does not support the presence of any impairment prior to the date last insured that would have resulted in the severity of the symptoms alleged. (Tr. 43). *See Warner*, 375 375 F.3d at 392 (it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence). As detailed above, the ALJ properly determined that evidence of record prior to Plaintiff's date last insured did not supports Plaintiff's subjective complaints of disability. Based on the foregoing the undersigned finds that the ALJ's credibility assessment is within the "zone of choice" and should therefore be affirmed. See *Felisky,* 35 F.3d at 1035

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| HELEN VOLPENHEIN, | Case No. 1:13-cv-235 |
| Plaintiff, | Beckwith, J. |
| v. | Bowman, M.J. |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).